O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BERKLEY NATIONAL INSURANCE COMPANY, | ) ) ) | Case No. EDCV 19-02189 DDP (SPx) |
| Plaintiff, | ) ) | **ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | ) ) | |
| CITY OF SAN BERNARDINO, ET AL., | ) ) | [Dkt. Nos. 23, 32] |
| Defendants. | ) ) | |

Presently before the court is Plaintiff Berkley National Insurance Company ("Berkley")'s Motion for Summary Judgment (Dkt. 32).[1] Having considered the submissions of the parties and heard oral argument, the court grants the motion and adopts the following Order.

**I. Background**

The facts of this case are not in dispute. In 1956, the entity now known as the Arc San Bernardino School of Hope ("the School") and the City entered into an agreement granting the School

---

[1] Berkley styles its motion as a cross-motion for summary judgment, in light of Defendant City of San Bernardino ("the City")'s Motion for Summary Judgment (Dkt. 23). The City sought to withdraw its motion, however, prior to argument.

the use of certain property near the City's Municipal Water Department's Antil Reservoir. (Declaration of Genevieve Rocha, Ex.1 (Dkt. 23-2).) The 1956 agreement provided that the School would "surrender the property and improvements, and the whole thereof, to the [City] at the expiration of [the] term or other termination of [the] agreement[,] and that all improvements and structures placed thereon by [the School] shall become the property of the [City.]" (Id.) Additional agreements in 1959 and 1961 granted the School use of additional lands. (Rocha Decl., Exs. 3, 4.) Both agreements, in terms identical to those of the 1956 agreement, stated that the School would surrender the entire property and any improvements to the City at the expiration or termination of the respective agreements. (Id.)

In 1969, the parties entered into yet another similar agreement. The 1969 agreement, like the prior agreements, stated that ownership of all improvements and structures would pass to the City upon the expiration or termination of the 1969 agreement. Unlike prior agreements, however, the introductory paragraph to the 1969 agreement stated, "THIS AGREEMENT . . . shall cancel and supersede the previous agreements . . . ." (Rocha Decl., Ex. 6.) The parties subsequently amended the 1969 agreement in 1971, 1981, 1995, and 2011. (Rocha Decl., Exs. 9, 10, 12, 14.) The 1971 amendment made adjustments to the lands available to the School, while the 1981, 1995, and 2011 amendments extended the term of the 1969 agreement. Each of the amendments made reference to the 1969 agreement, and no amendment made any reference to the provision of the 1969 agreements granting the City ownership of any improvements and structures at the termination of the agreement. Under the most

2

1 recent, 2011 amendment, the 1969 agreement will expire in August
2 2021. (Rocha Decl., Ex. 14.)
3     In June 2019, a main water supply pipe operated by the City
4 and its water department burst. (Declaration of Christing Luong-
5 Pham (Dkt. 23-1), Ex. 15 at 3.) Water flooded through an
6 agricultural farm and onto the School's leased property, causing
7 extensive damage to the School's property and displacing the
8 School's operations. (Id.) At the time, the School was covered by
9 an insurance policy issued by Berkley. (Declaration of Christopher
10 E. Finkley.) Berkley has paid for the School's losses, and, in the
11 instant action, stands in the shoes of its insured to recover
12 damages from the City. Berkley now seeks partial summary judgment
13 that the School owned, and continues to own, the property impacted
14 by the 2019 incident.

## II. Legal Standard

16     Summary judgment is appropriate where the pleadings,
17 depositions, answers to interrogatories, and admissions on file,
18 together with the affidavits, if any, show "that there is no
19 genuine dispute as to any material fact and the movant is entitled
20 to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party
21 seeking summary judgment bears the initial burden of informing the
22 court of the basis for its motion and of identifying those portions
23 of the pleadings and discovery responses that demonstrate the
24 absence of a genuine issue of material fact. See Celotex Corp. v.
25 Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from
26 the evidence must be drawn in favor of the nonmoving party. See
27 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the
28 moving party does not bear the burden of proof at trial, it is

entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel have an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

**III. Discussion**

4

Berkley contends that, under the 1969 agreement and all of its subsequent amendments, the School owns various impacted buildings and improvements until August 2021, at which point the agreement will expire and the School will surrender the property and all improvements to the City, which will then, and only then, become the owner of all improvements and structures.[2] The City argues, however, that it owns the damaged property, and that the City has been the sole owner since no later than 1969.

"[T]he interpretation of a contract must give effect to the mutual intention of the parties . . . at the time the contract is formed . . . ." E.M.M.I. Inc. v. Zurich American Ins. Co., 32 Cal.4th 465, 470 (2004) (internal quotation and citation omitted). "Such intent is to be inferred, if possible, solely from the written provisions of the contract." Id.; see also Cal. Civ. Code § 1639. "When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party. If it is not, the case is over." S. Cal. Edison Co. v. Superior Court, 37 Cal. App. 4th 839, 847 (1995). A court may, however, look to extrinsic evidence, including the conduct of the parties, to determine in the first instance whether a contract is reasonably susceptible to a party's interpretation. Id. If so, the court must then consider all evidence in examining the intent of the parties. City of Bell v. Superior Court, 220 Cal. App. 4th 236, 248 (2013).

---

[2] Berkley filed the same memorandum in support of both its own motion and its opposition to the City's summary judgment motion. Some of the arguments in Berkley's memorandum are directed toward the City's now-withdrawn arguments, and are no longer pertinent.

5

Nowhere does the 1969 agreement state that the City is the owner of the subject property. Nevertheless, the City asserts that the 1969 agreement "leaves no doubt" that the City is the "clear owner" of the property now, owned the buildings in 2019, and indeed, has owned the buildings since 1969. (Opposition at 2:7-8, 19.) The City reaches this conclusion by focusing on (1) the 1969 agreement's provision that the agreement "shall cancel and supersede the previous agreements" and (2) the supposed effect of that provision in light of the original, 1956 agreement. Like the 1969 agreement, the 1956 agreement provided that ownership would pass to the City upon the termination of that agreement. Thus, the argument goes, because the 1969 agreement clearly canceled the 1956 agreement, the parties intended to transfer ownership to the City in 1969.

This argument has no merit. Had the 1969 agreement stated only that the 1956 agreement was no longer in effect, the City's interpretation might be reasonable. The 1969 agreement, however, like its predecessors, explicitly stated that "at the expiration of this term or other termination of this agreement, . . . all improvements and structures placed [on the property] by [the School] <u>shall become</u> the property of the [City]." (Rocha Decl., Ex. 6 at 2 (emphasis added).) The inclusion of this provision would be utterly nonsensical if, as the City now asserts, the parties understood the City to be the owner of the structures and improvements as of that moment in 1969.[3]

---

[3] Even if, as the City asserts, the 1969 agreement's prefatory cancellation of the 1956 agreement did trigger a change in ownership, the remainder of the 1969 agreement, including the

(continued...)

Although the language of the 1969 agreement alone is sufficient indication that the City's current interpretation is unreasonable, extrinsic evidence also supports that conclusion. There is no evidence of a change in the relationship of the parties or in the School's operations in 1969 or at any point before the 2019 flood, let alone evidence of a change of possession. Indeed, San Bernardino County Assessor's records indicate that the School is the owner of the property, and has been so since 1969. (School's Request for Judicial Notice, Ex. B (Dkt. 25-3) at 1, 24;, Ex. D.)[4] Thus, although the Court agrees that the 1969 agreement is subject to only one reasonable interpretation, it is that put forth by the School, not the City's reading. Under the plain language of the 1969 agreement and the subsequent amendments to it, the School owned the property at the time of the 2019 incident.

**IV. Conclusion**

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment is GRANTED.

---

[3](...continued)
above-quoted provision, also reconveyed the property to the School. Whether since 1956 or 1969, the School clearly owned the property in 2019.

[4] The City's baseless, pro forma objection to this evidence is overruled. Courts routinely take judicial notice of public records, including county records such as those maintained by county recorders and assessors. See, e.g., Alexander v. Deutsche Bank Nat. Tr. Co., No. 13-CV-407-MMA WVG, 2013 WL 3320455, at *3 (S.D. Cal. July 1, 2013); Chavez v. Washington Mut. Bank, No. 12-CV-04393-LHK, 2013 WL 2450128, at *4 (N.D. Cal. June 5, 2013). Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001), is inapt. There, the district court improperly took judicial notice of the disputed fact that a mentally disabled person knowingly and voluntarily waived his right to challenge his extradition. Here, although the City disputes the facts reflected in San Bernardino County records, it provides no evidence or explanation why any such dispute is reasonable. See Fed. R. Evidence 201(b).

7

IT IS SO ORDERED.

Dated: January 13, 2021

                                  DEAN D. PREGERSON
                                  United States District Judge